**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

**THOMAS DEEGAN, et al.,**

       **Plaintiffs,**

**v.**                            **Case Number:  6:12-cv-00523**

**STATE OF WEST VIRGINIA, et al.,**

       **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FILED ON BEHALF OF DEFENDANTS JEFFREY B. REED
AND THE STATE OF WEST VIRGINIA**

Defendants Jeffrey B. Reed and the State of West Virginia respectfully submit this memorandum of law in support of the motion to dismiss filed on their behalf.

## I.  STATEMENT OF FACTS

Defendant Jeffrey B. Reed (hereinafter "Judge Reed") is a circuit court judge for the Fourth Judicial Circuit for the State of West Virginia.  He is the presiding circuit court judge in criminal cases filed against the Plaintiffs in Wood County Circuit Court.

The Plaintiffs, Thomas Deegan and his mother Darlene Deegan, are criminal defendants in cases that are styled as follows:  *State v. Thomas Deegan*, Case No. 11-F-101 and *State v. Darlene Deegan*, Case No. 11-F-102, Wood County Circuit Court, West Virginia.  (See Exhibits 1 and 2).[1]  The Plaintiffs were each charged with one

---

[1] It has been recognized that a court, on a motion to dismiss, "should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record and other similar materials that are subject to judicial notice."  *Pennington v. Teufel*, 396 F. Supp. 2d 715, 719 (N.

count of manufacturing a controlled substance and one count of conspiracy to commit manufacturing of a controlled substance.  (See Exhibit 3).

The circumstances that led to the criminal cases arose after Mr. Deegan called a crisis hotline and threatened to commit suicide.  (Complaint, pp. 2-3, ¶ 5).  When law enforcement responded to the Plaintiffs' home, they saw a small indoor hydroponics natural herb garden for growing marijuana and confiscated 63 marijuana plants. (Complaint, p. 3, ¶ 7).  As noted in the Plaintiffs' Complaint and as set forth in the indictments filed in the underlying criminal cases, the Plaintiffs were charged with both manufacturing a controlled substance and with conspiracy to manufacture a controlled substance.  (See Exhibit 3).

The Plaintiffs' primary contention in their Complaint is that the case should be "removed" to the Ecclesiastical Court of Justice in Pennsylvania.  (See Complaint, pp. 5-6, ¶ 3).  With regard to Judge Reed, the Plaintiffs assert that he wrongfully denied their motion to remove the criminal cases to this entity and insist that the entity has legal jurisdiction and venue over these cases.  (Complaint, pp. 9-10).  The Plaintiffs, in a lengthy discourse, make various arguments in support of their position, such as freedom of religion.

The underlying criminal case for Mr. Deegan began as most criminal cases do: Mr. Deegan entered a plea of not guilty.  (See Exhibit 4).  On December 28, 2011, Mr. Deegan indicated that he did not want his court-appointed counsel to continue representing him.  (See Exhibit 5).  At this same hearing, Ms. Darlene Deegan decided

---

D. W. Va. 2005).  The record of the underlying Wood County criminal cases are matters of public record and are integral to an understanding of the Complaint in this case.

to proceed with court-appointed counsel.  (See Exhibit 5).  On January 4, 2012, Mr. Deegan elected to proceed *pro se* and standby counsel was appointed.  (See Exhibit 6). At a hearing conducted on February 21, 2012, Mr. Deegan informed the Court that he was withdrawing various motions he had filed.  (See Exhibit 7).  At this hearing, Judge Reed also addressed the fact that a notice of removal had been filed.  Judge Reed, however, noted that the Ecclesiastical Court of Justice was not a recognized entity and scheduled the case for trial.  (See Exhibit 7).  Mr. Deegan did not appear for trial as scheduled on February 29, 2012.  Accordingly, his bond was revoked, and a capias was issued.  (See Exhibit 9).

Ms. Darlene Deegan appeared in Wood County Circuit Court on February 29, 2012, and entered into a plea agreement in which she pled guilty to misdemeanor possession of a controlled substance greater than 15 grams and the conspiracy charge was dismissed.  (See Exhibit 8).  A sentencing hearing will be scheduled.

Based on these undisputed facts, the Plaintiffs have sued four Wood County officials as well as Judge Reed and the State of West Virginia.  As relief, the Plaintiffs have requested damages in the amount of Ten Million Dollars ($10,000,000).  As alleged by the Plaintiffs, Five Million Dollars ($5,000,000) are for damages related to the Plaintiffs' third cause of action.  (Complaint, p. 9; p. 16, ¶ 3).  In addition, Five Million Dollars ($5,000,000) are demanded for damages related to a claim for therapy for Mr. Deegan.  (Complaint, p. 16, ¶ 5).  Further, the Plaintiffs request that this Court enter an order that would remove the underlying Wood County criminal cases to the Ecclesiastical Court of Justice in Pennsylvania.  (Complaint, p. 16, ¶ 4).  The Plaintiffs, therefore, have filed this case because they have been subject to criminal prosecution

3

in Wood County Circuit Court, and they erroneously believe that the Ecclesiastical Court of Justice in Pennsylvania is the lawful forum for these criminal cases.

## II.  ARGUMENT OF LAW

### A.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  It is well established under federal law that courts are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to Rule 12(b)(6).  *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986).  In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Further, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3rd Cir. 1997).  A plaintiff, therefore, has the obligation to state a viable claim that is based on both cognizant legal authority and on more than conclusory or speculative factual allegations.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for dismissal of a case because a court lacks subject matter jurisdiction.  In such cases, "the burden of proving subject matter jurisdiction is on the plaintiff."  *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).  When evaluating such an issue, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id.*  The standard of review is *de novo.  Id.*

4

**B.    The Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted Because There are No Constitutional or Statutory Provisions that Authorize the Removal of a West Virginia Criminal Case to the Ecclesiastical Court of Justice in Pennsylvania.**

The gravamen of the Plaintiffs' Complaint is that the underlying Wood County criminal cases should be "removed" to the Ecclesiastical Court of Justice in Pennsylvania.  The Plaintiffs have not, however, cited to any recognized legal authority that would confer jurisdiction upon this entity or that establishes a procedure for the removal of the Wood County criminal cases to it.    Neither the United States Constitution, nor the West Virginia Constitution even mentions the Ecclesiastical Court of Justice, Pennsylvania.  Rather, the West Virginia Constitution establishes that the proper jurisdiction for these criminal cases is a West Virginia circuit court.  See W. Va. Const. art. 8, § 6.[2]   Additionally, the West Virginia Constitution provides that proper venue for a criminal case is "in the county where the alleged offense was committed, unless upon petition of the accused and for good cause shown, it is removed to some other county."  W. Va. Const. art. 3, § 14.[3]   Since the criminal acts occurred in Wood

---

[2] The relevant part of Section 6 of Article 8 of the West Virginia Constitution provides that: "Circuit courts shall have original and general jurisdiction of all civil cases at law where the value or amount in controversy, exclusive of interest and costs, exceeds one hundred dollars unless such value or amount is increased by the Legislature; of all civil cases in equity; of proceedings in habeas corpus, mandamus, quo warranto, prohibition and certiorari; and of **all crimes and misdemeanors**. On and after January one, one thousand nine hundred seventy-six, the Legislature may provide that all matters of probate, the appointment and qualification of personal representatives, guardians, committees and curators, and the settlements of their accounts, shall be vested exclusively in circuit courts or their officers, but until such time as the Legislature provides otherwise, jurisdiction in such matters shall remain in the county commissions or tribunals existing in lieu thereof or the officers of such county commissions or tribunals."  (emphasis added).

[3] As established by the West Virginia Constitution, "Trials of crimes, and of misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and **in the county where the alleged offence was committed**, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence;

County, West Virginia, venue is proper there.  Because there is no constitutional or statutory authority for the Plaintiffs' claim that the case should be removed to the Ecclesiastical Court of Justice in Pennsylvania, they have failed to state a claim upon which relief can be granted.  Therefore, the Plaintiffs' case should be dismissed.

## C.    The Doctrine of Judicial Immunity Bars the Plaintiffs' Complaint Against Judge Reed.

The doctrine of judicial immunity is a fundamental principle of law that prohibits civil suits against judicial officers for their judicial actions.  *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099 (1978).  The United States Supreme Court recognized this precept of law in 1872 when it stated that:  "The principle, therefore, which exempts judges of courts of superior or general authority in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is a well-ordered system of jurisprudence."  *Bradley v. Fisher*, 80 U.S. 335, 347 (1872).  As held by the United States Supreme Court in *Bradley*, "judges of courts of superior or general jurisdiction are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  *Bradley*, 80 U.S. at 352.

The bar of judicial immunity can only be overcome in two sets of circumstances.  A judge is not immune from liability for his or her non-judicial acts.  *Stump*, 435 U.S. at 360, 98 S. Ct. at 1106.  To determine whether an act is a "judicial act," a court should examine the nature of the act itself.  *Stump*, 435 U.S. at 362, 98 S. Ct. at 1107-08.  The

---

and there shall be awarded to him compulsory process for obtaining witnesses in his favor."  W. Va. Const. art. 3, § 14. (emphasis added).

analysis should focus on whether the act complained of is a function normally performed by a judge.  *Id.*  The court should consider the expectations of the parties -- whether they dealt with the judge in his or her official capacity.  *Id.*  Secondly, a judge is not immune for actions, though judicial in nature are taken in complete absence of all jurisdiction.  *Stump,* 435 U.S. at 356-57, 98 S. Ct. at 1104-05; *Bradley v. Fisher*, 13 Wall. at 351.

Nor is a judge liable in a civil action "however erroneous the act may have been." *Bradley*, 80 U.S. at 347.  As summarized more recently by the United States Supreme Court, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . .."  *Stump*, 435 U.S. at 357, 98 S. Ct. at 1105.  As emphatically stated by the Supreme Court, a judge is still protected from suit "even if his exercise of authority is flawed by the commission of grave procedural errors."  *Stump*, 435 U.S. at 359, 98 S. Ct. at 1106.  Judicial immunity, therefore, is not abrogated simply because a plaintiff alleges that a judge has erred in an underlying case.

It is undisputed that Judge Reed is the presiding judge in the Plaintiffs' underlying criminal cases.  Additionally, the Plaintiffs' Complaint identifies a specific ruling by Judge Reed, the denial of their motion to remove the criminal cases to the Ecclesiastical Court of Justice in Pennsylvania, as his allegedly wrongful act.[4]  The allegation concerning Judge Reed involves what can only be described as a prototypical judicial act because it is a ruling.  Issuing a ruling on disputed matters is fundamentally a judicial act.

---

[4] It should be noted that Judge Reed, in the underlying criminal cases, found that a "Notice of Removal" had been filed, as opposed to a motion.  (See Exhibit 7).  The Plaintiffs, however, have referred to Judge Reed as denying their request for removal.  (See Complaint, p. 9).

Therefore, this case is exactly the type of case that judicial immunity bars, one that seeks to impose civil liability on a judge for rulings in an underlying case.

Although judicial immunity may be overcome if a judge acts in the complete absence of all jurisdiction, the Plaintiffs cannot advance a credible argument that Judge Reed's ruling can be characterized in this manner.  As established by the West Virginia Constitution, circuit courts are courts of original and general jurisdiction, and they have jurisdiction over all crimes and misdemeanors.  W. Va. Const. art. 8, § 6.  Additionally, the West Virginia Legislature has enacted West Virginia Code § 51-2-2(c), and it provides that circuit courts have jurisdiction over all crimes and misdemeanors.[5]  Not only do West Virginia circuit courts have jurisdiction to address criminal cases arising in West Virginia, they also have jurisdiction to address and adjudicate federal constitutional claims that arise in the course of a West Virginia case, whether criminal or civil.  *Moore v. Sims*, 442 U.S. 451, 429, 99 S. Ct. 2371, 2380-81 (1979).  Therefore, Judge Reed's denial of the Plaintiffs' motion to "remove" their case was not taken in the complete absence of all jurisdiction because both his ruling and the type of case in which the ruling was made fall squarely into the jurisdiction of the Wood County Circuit Court for West Virginia.

In their Complaint, the Plaintiffs make some conclusory allegations that the Defendants have conspired against them and rely on 42 U.S.C. § 1985.  The United States Supreme Court, however, has recognized that allegations of conspiracy against

---

[5] West Virginia Code § 51-2-2(c) states that:  "The circuit court shall have original and general jurisdiction in all of the following matters:  (1) Habeas corpus; (2) Mandamus; (3) Quo warranto; (4) prohibition; (5) Crimes; and (6) Misdemeanors."

a judge are insufficient to overcome judicial immunity.  *Dennis v. Sparks*, 449 U.S. 24,

101 S. Ct. 183 (1980).  As noted by the United States Supreme Court in *Dennis*:

> Judicial immunity arose because it was in the public interest
> to have judges who were at liberty to exercise their
> independent judgment about the merits of a case without
> fear of being mulcted for damages should an unsatisfied
> litigant be able to convince another tribunal that the judge
> acted not only mistakenly but with malice and corruption.
> *Dennis*, 449 U.S. at 31, 101 S. Ct. at 188 (Citing *Pierson v.
> Ray,* 386 U.S. 547, 554, 87 S. Ct. 1213, 1217-1218 (1967)).

Even under a liberal reading of the Complaint, the Plaintiffs have not stated any

basis to avoid dismissal of Judge Reed as a Defendant.  As a West Virginia circuit court

judge who simply denied the Plaintiffs' motion in their respective criminal cases, he is

entitled to protection from suit based upon the doctrine of absolute judicial immunity.

## D.    Under the Principles of *Younger* Abstention, this Case Should be Dismissed.

In *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971), the United States

Supreme Court articulated an abstention doctrine to prevent federal courts from

unwarranted involvement in pending state court criminal prosecutions, notwithstanding

allegations of federal constitutional violations.  The purpose of the *Younger* abstention

doctrine is to "permit state court's to try state cases free from interference by federal

courts." *Younger*, 401 U.S. at 43, 91 S. Ct. at 750.  The doctrine is premised upon two

fundamental principles.  The first is a principle of equity.  Even though federal courts

have a duty to exercise the jurisdiction conferred upon them by Congress, equitable

relief, such as the declaratory judgment sought by the Plaintiffs in this case, is

discretionary.  The federal statutes defining the scope of federal court jurisdiction:

9

> [D]o not call into question, the federal court's discretion in determining whether to grant certain types of relief - a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is "the normal thing to do." *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S. Ct. 2506 (1989) (citation omitted) (quoting *Younger*, 401 U.S. at 45, 91 S. Ct. at 751).

The second, and more dominant, principle underlying *Younger* abstention is one of comity:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Younger*, 401 U.S. at 44, 91 S. Ct. at 750.

The *Younger* doctrine thus embodies the vital principles of federalism and comity, constituting a "strong policy against federal court interference with any pending state judicial proceeding unless extraordinary circumstances so warrant." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994); see also *Employers Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, 116 S. Ct. 816 (1996).

With regard to *Younger* abstention, the United States Supreme Court has recognized that: "[A] pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights . . .." *Steffel v. Thompson*, 451 U.S. 452, 460, 94 S. Ct. 1209, 1216 (1974). Four years later, the United States Supreme Court again explained that: "The *Younger* doctrine,

10

which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff."  *Moore v. Sims*, 442 U.S. 415, 423, 99 S. Ct. 2371, 2377 (1979) (quoting *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S. Ct. 764, 766 (1971)).  And as explained in *Younger*, the United States Supreme Court stated that:  "Certain types of injury, in particular, the cost, anxiety and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of the term.  Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution."  *Younger*, 401 U.S. at 46, 91 S. Ct. at 751.

The Plaintiffs have not pled any facts that support a finding that they would be subject to "irreparable injury" if the West Virginia criminal cases continue to proceed. As evidenced by the record in the underlying state court cases, they are subject to prosecution for conspiracy and manufacturing a controlled substance.  However, being subject to prosecution alone is not enough to warrant an injunction or other type of equitable relief that would interfere with the state court criminal cases.  As further evidenced by the record in the underlying criminal cases, the Plaintiffs not only have the opportunity to raise their constitutional claims in the state court cases, they have done so.  The Plaintiffs, therefore, cannot show that they are entitled to any equitable relief with regard to the West Virginia criminal cases.

**E.**    **The Eleventh Amendment of the United States Constitution is a Jurisdictional Bar to any Claim Asserted Against the State of West Virginia.**

The Eleventh Amendment of the United States Constitution bars a state from being sued directly in a federal court by their own citizens or citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 945 S. Ct. 1347 (1974).  The Eleventh Amendment provides that:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., amend. XI.  The Supreme Court has interpreted this immunity broadly, succinctly stating:  "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, a State cannot be sued directly in its own name regardless of the relief sought."  *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, n. 14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 305 (1978) (*per curiam*)).

In the style of the Complaint, the Plaintiffs have named the State of West Virginia as a defendant, and they also refer to the State of West Virginia throughout the body of the Complaint.  However, the Eleventh Amendment expressly prohibits this type of suit.  In addition, the State of West Virginia has not consented to this suit.  Further, there is no federal legislative provision that overrides the Eleventh Amendment's guarantee of sovereign immunity in this type of case.  Therefore, the State of West Virginia must be dismissed from this case.

### III. CONCLUSION

Even under a liberal reading of the Complaint, this case should be dismissed for failure to state a claim upon which relief can be granted.  Although the Plaintiffs have

asserted that this case should be removed to the Ecclesiastical Court of Justice in Pennsylvania, there is no constitutional or statutory authority that recognizes this entity or would support the removal of a West Virginia criminal case to it.  With regard to Judge Reed, he, as the presiding circuit court judge in the underlying criminal cases, is entitled to be dismissed from this case based upon the well-established doctrine of judicial immunity.   In addition, the *Younger* abstention doctrine indicates that the Plaintiffs are not entitled to any equitable relief with regard to their criminal cases. Finally, the Eleventh Amendment prohibits the Plaintiffs from proceeding with a case against the State of West Virginia in this Court.

WHEREFORE, it is respectfully requested that this Court dismiss the Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and provide any further relief that this Court finds is just and equitable.

HONORABLE JEFFREY B. REED and
STATE OF WEST VIRGINIA
Defendants

By Counsel

/s/ Teresa J. Lyons
John M. Hedges (WV Bar ID 1662)
Teresa J. Lyons (WV Bar ID 8047)
HEDGES LYONS & SHEPHERD, PLLC
141 Walnut Street
Morgantown, WV 26505
Telephone:  304-296-0123
Fax: 304-296-0713
E-mail:  tlyons@hlslawfirm.com

Counsel for Defendants Judge Jeffrey B. Reed and State of West Virginia

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of March 2012, I electronically filed the foregoing *Memorandum of Law In Support of Motion To Dismiss Filed On Behalf of Defendants Jeffrey B. Reed and the State of West Virginia* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Wendy E. Greve

I hereby certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

Thomas Deegan
317 Locust Drive
Mineral Wells, WV 26150

Darlene Deegan
317 Locust Drive
Mineral Wells, WV 26150

/s/ Teresa J. Lyons
John M. Hedges (WV Bar ID 1662)
Teresa J. Lyons (WV Bar ID 8047)
HEDGES LYONS & SHEPHERD, PLLC
141 Walnut Street
Morgantown, WV 26505
Telephone:  304-296-0123
Fax: 304-296-0713
E-mail:  tlyons@hlslawfirm.com